# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,    )   CASE NO. 17-CR-217 (FAB)
Plaintiff,               )
                      )
vs.                    )   SENTENCING HEARING
                      )
HENRY DIAZ-RIVERA,       )
Defendant.              )

TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE THE HONORABLE JUDGE FRANCISCO A. BESOSA
SAN JUAN, PUERTO RICO
Thursday, May 3, 2018

APPEARANCES:

For the United States:
                JUAN C. REYES-RAMOS, AUSA
                United States Attorney's Office
                Torre Chardón, Suite 1201
                350 Carlos Chardón Street
                San Juan, PR 00918

For the Defendant:
                JAVIER A. CUYAR-OLIVO, AFPD
                Federal Public Defender's Office
                Patio Gallery Building
                241 Franklin D. Roosevelt Ave.
                Hato Rey, PR 00918-2441

Produced by mechanical stenography; computer-aided transcription

1          (PROCEEDINGS COMMENCED AT 10:05 A.M.)

2

3          THE CLERK:  Criminal Case No. 17-217, United States

4   of America versus Henry Diaz-Rivera for Sentencing Hearing.

5          On behalf of the Government, Assistant United

6   States Attorney Juan C. Reyes-Ramos.

7          On behalf of the Defendant, Attorney Javier A.

8   Cuyar-Olivo.

9          Defendant is present and assisted by the certified

10  court interpreter.

11         MR. REYES-RAMOS:  Good morning, again, Your Honor.

12  The Government is ready to proceed.

13         MR. CUYAR-OLIVO:  Good morning, Your Honor.  The

14  Defense is ready.

15         THE COURT:  Mr. Cuyar, is there anything you would

16  like to say on behalf of Mr. Diaz before I pronounce

17  sentence?

18         MR. CUYAR-OLIVO:  Yes, Your Honor.

19         Before that, may I address the Court regarding

20  my --

21         THE COURT:  Your objections.

22         MR. CUYAR-OLIVO:  Yes, Your Honor.  Because today I

23  was able to converse with Mr. Reyes attempting to resolve.  I

24  want to submit to the Court respectfully that, as to the

25  objection number 1 in docket number 43, we are going to

1    retire it.

2              THE COURT:  Withdraw it.

3              MR. CUYAR-OLIVO:  I'm sorry.  To withdraw it,

4    Your Honor, that's correct.

5              On the second objection, paragraph number 4, we

6    have reached an agreement to eliminate the last four words,

7    which will be "he resisted the arrest."  That will be the

8    second objection in docket number 43.

9              THE COURT:  One moment, please.

10             The first objection is in paragraph 3, and you are

11   withdrawing that objection; right?

12             MR. CUYAR-OLIVO:  Yes, Your Honor.

13             THE COURT:  The second objection is that he didn't

14   follow orders, that he resisted the arrest.

15             MR. REYES-RAMOS:  So, basically, what the parties

16   stipulated to is that the Defendant did not follow orders

17   when the police officers intervened with the Defendant and

18   asked him to, for example, "Place the car in parking."  The

19   officers tried to then, by force, put the car in parking so

20   that the Defendant would not drive away.  So he was not

21   following orders there, and he was resisting the officers'

22   orders at that time.

23             What we would agree to is that, after the Defendant

24   exited the car and the police officers saw that he had a gun

25   and he was placed under arrest, at that later time there

1  wasn't a resistance.  We would stipulate to that.

2      But we do stipulate to the fact that there was a

3  resistance initially when the police officers intervened, as

4  stated in paragraph 15 of the PSR, which describes how the

5  intervention occurred.  Specifically, it says that, officers

6  approached the vehicle and asked the driver for license and

7  registration, but he refused.  Later the driver was

8  identified as Henry Diaz-Rivera.  The Defendant disobeyed and

9  attempted to drive away but was blocked by an agent who was

10  standing in front of his car.  Then the officer once again

11  ordered Diaz-Rivera to turn off the car, but he refused and

12  continued to drive away slowly.

13      I believe the Defendant does not object to that,

14  and he does not object to the fact that he resisted when

15  police officers tried to place the car in parking.

16      But we would stipulate to the fact that, after he

17  exited the car and was placed under arrest, there was no

18  resistance at that time.

19      MR. CUYAR-OLIVO:  Your Honor, we submit that it was

20  also based on the totality of the circumstances:  The

21  darkness, the hour, it was not a marked police car.  But then

22  he even gave afterwards even his driver's license.  But I

23  think we are in agreement as to that.

24      THE COURT:  Is there anything in the PSR that you

25  would like the probation officer to change?

1      MR. REYES-RAMOS:  Basically, Your Honor, what we

2  agreed to was that, in paragraph 29, the second sentence,

3  that we delete the last four words.

4      THE COURT:  "He failed to follow orders and

5  resisted the arrest."

6      MR. REYES-RAMOS:  So the sentence would send at "he

7  failed to follow orders," period.  And the second part, "and

8  resisted the arrest," we could delete that last phrase.

9      THE COURT:  We will make that change in the

10  pre-sentence investigation report.

11      Anything else?

12      MR. CUYAR-OLIVO:  Yes, Your Honor.  The third

13  objection, we are eliminating it, withdrawing it because we

14  note that the probation officer amended the paragraph.

15      THE COURT:  Which one?

16      MR. CUYAR-OLIVO:  Paragraph 5.

17      THE COURT:  You are not withdrawing it.  It's just

18  that the probation officer agreed with your objection.

19      MR. CUYAR-OLIVO:  Exactly, yes.

20      With respect to paragraph 51, we are in agreement.

21  We have the official records that the conviction charged is

22  5.4 and not 5.7.

23      THE COURT:  Yes.  I spoke with the probation

24  officer about that.

25      MR. CUYAR-OLIVO:  Perfect.

1     THE COURT:  And that change will be made.

2     MR. CUYAR-OLIVO:  Perfect, Your Honor.

3     MR. REYES-RAMOS:  Your Honor, as to paragraph 50, I

4  spoke with Defense Counsel, and he is waiving his objection

5  to that paragraph.  Paragraph 50 is the first paragraph under

6  the Adult Criminal Convictions section.

7     THE COURT:  Yes, I have it.

8     MR. CUYAR-OLIVO:  Yes.  And we don't want to

9  mal-interpret that we are challenging those criminal history

10  convictions.  That's not the case, Your Honor.  So I think we

11  are in agreement.

12     Aside from that, what I said to Mr. Reyes was,

13  Henry told me last night, yesterday, the date of birth is not

14  1982.  It is page 2 of the amended PSR, docket 37.  He was

15  born in 1986, instead of '82.  So he is 32 years old.  Not

16  35.

17     THE COURT:  We will make that change also.  Date of

18  birth, July 3, 1986.

19     MR. CUYAR-OLIVO:  Yes, Your Honor.  Thank you very

20  much.

21     Aside from that, we submitted a sentencing

22  memorandum.  We submitted a supplement with a character

23  letter of his common-law wife.  She is on the mainland.

24  That's the reason she is not here.

25     We want to recognize the presence of Mr. Luis Diaz.

1    He is the brother of Henry.  He has always provided support

2    to Henry.

3              His mother, she is not here.  She is a patient of

4    Alzheimer, and his father passed away in 2016.  That affected

5    him.

6              As we submitted in the memo, Your Honor, in 2016 he

7    went voluntarily to try to receive treatment for his illness

8    of drug addiction, Your Honor.  He has been under custody for

9    13 months.  If you see him now and you see the picture on

10   page 2, you will see the difference.  He is more mentally

11   capable right now, Your Honor.  He has been cleaned.

12             In MDC, he told me that he didn't know that habit.

13   He told me that he hadn't received also drug testing.  The

14   last one one month.  He has always stayed away from drugs.

15             He has made some errors in his life.  The first

16   one, Your Honor, he left school at seventh grade.  That was

17   the route that commenced servicing.  Then he started using

18   controlled substances, hanging out with not the best people,

19   Your Honor.

20             He is mature, Your Honor.  I know he already faced

21   prison, Your Honor.  But as I mentioned, he faced state

22   prison.  That when he completed his term, he was released,

23   and no one was no supervising anymore, and that contributed

24   for him to get hooked on drugs.

25             As I mentioned in the memo, now he is going to have

1  supervision of the probation office, even have curfew,

2  electronic monitoring device.  And he is fully aware,

3  Your Honor, that if he fails -- he saw Mr. Vargas right now.

4  If he fails, he will get revoked.

5        But farther than that, Your Honor, I think that you

6  were lenient with Mr. Vargas in the sense, I have advised

7  him -- I have one case of the Court of Appeals that I worked

8  from this District, *U.S. v. Jason Cruz-Fernandez*.  The person

9  tested positive, and Judge Dominguez -- the guideline was

10  four to ten months, and Judge Dominguez give him 48 months,

11  and the Court of Appeals confirmed.

12        My point is, Your Honor, give Henry the

13  opportunity.  We stand by the plea agreement.  It's ten

14  years; nine years in the 924(c) and one year in the

15  possession charge.  I believe that ten years is adequate.

16  There is no parole in Federal Court.

17        He will only be rewarded if he has good time with

18  about 15, 14 percent, so he will have to make over eight and

19  a half years, if he complies with some conditions, if

20  Your Honor grants him the ten years of sentence in the first

21  stage of the sentence.  In the second stage, the supervised

22  release, Your Honor will give him what Your Honor considers

23  appropriate.

24        But he is aware that if he fails or if he tests

25  positive, he will be back here, like Mr. Vargas, and

1   Your Honor will be able to impose up to 60 months.  Based on

2   his illness, he should be granted an opportunity, Your Honor.

3   So that's why we stand by the plea agreement for the 10

4   years; 9 consecutive with the other 1 year.

5           Submitted, Your Honor.

6           THE COURT:  Mr. Reyes.

7           MR. REYES-RAMOS:  Yes, Your Honor.

8           I would like to add that there is another

9   stipulation that we discussed which related to the

10  Defendant's objection to the paragraph in the PSR that stated

11  that the Defendant lived in a wealthy neighborhood.

12          THE COURT:  Yes.  That has been changed.

13          MR. REYES-RAMOS:  He suggests that it say middle

14  class.  We do not object.

15          THE COURT:  I spoke with the probation officer

16  about that, and she has no problem, and I have no problem in

17  making that change.

18          MR. REYES-RAMOS:  Also, I understand that counsel

19  is not requesting or pressing his objections to the

20  paragraphs related to the arrests, prior arrests.

21          MR. CUYAR-OLIVO:  No, we are not.

22          THE COURT:  Okay.

23          MR. REYES-RAMOS:  As to the sentencing factors,

24  Your Honor, this was a serious offense.  The Defendant was

25  caught in possession of cocaine.  He admits that he possessed

1    that cocaine with the intent to distribute it.

2            He also had a loaded firearm, and as stated in the

3    pre-sentence report, the firearm had a selector chip, a

4    selector switch which converts the gun to fire in the fully

5    automatic mode as a machine gun.  And we understand it's not

6    objected here that the firearm was a machine gun.

7            Now, the Ninth Circuit has found that, short of

8    bombs, missiles and biochemical agents, it can conceive of

9    few weapons that are more dangerous than machine guns.

10   *United States v. Henry*, 2012 case.  And we agree with that,

11   Your Honor.

12           Here, the Defendant not only possessed a machine

13   gun, but he also carried it during and in relation to a drug

14   trafficking crime.

15           THE COURT:  That's 30 years right there.

16           MR. REYES-RAMOS:  Yes, Your Honor.

17           And in this case we are standing by the plea

18   agreement.  We are not requesting that this Court impose the

19   30-year minimum sentence, and that's Count Four, which we are

20   going to request that it be dismissed.  But the fact is that

21   this is what the Defendant was exposed to if he had proceeded

22   to trial or had entered a straight plea in this case.

23           So, this is definitely a serious offense.  And by

24   the way, the plea agreement -- under the plea agreement, the

25   Government requests a total of 12 years; 11 years on the gun

1   count and 1 year on the drug count.

2           Also, Your Honor, it bears mentioning the need for

3   deterrence in Puerto Rico.  A need for deterrence is a

4   well-recognized sentencing factor.  Therefore, as in the case

5   of Puerto Rico, violent crime -- and this is from the First

6   Circuit's opinion in *Flores-Machicote* -- is running rampant,

7   the judge reasonably may conclude that a need for deterrence

8   is great, and this may translate into a stiffer sentence.

9           As this Court found in *Narvaez-Soto*, this Court has

10  discretion make a reasoned determination predicated on its

11  experience that the incidents of violent crime, and

12  particularly gun-related violent crime is an acute problem in

13  Puerto Rico.

14          Also, considering the Defendant's criminal history,

15  he has two prior convictions for firearm offenses.  And those

16  are at paragraphs 50 and 51 of the pre-sentence report.

17          Now the Defendant has recidivate with a third

18  firearm offense.  This time a 924(c) firearm offense.

19          Considering those factors and also the need to

20  promote respect for the law, the Government recommends 12

21  months of imprisonment in total, and that is, 11 months on

22  the 924(c) charge, to be served consecutively with 1 year on

23  the drug charge.

24          Thank you, Your Honor.

25          THE COURT:  Mr. Diaz, is there anything you would

1    like to say?

2              DEFENDANT DIAZ-RIVERA:  Yes.

3              Good morning, Judge.  First of all, I would like to

4    thank God and my family because they have given me support

5    and they will continue to give me support throughout this

6    process.  I want to thank everyone, including the attorney

7    here.  And I also want to thank everyone because I am going

8    to receive help.  I am going to receive help finding a job

9    and also help in building up my life again because it has

10   been destroyed by addiction.  And I expect to take advantage

11   of that opportunity you are giving me.

12             And I thank you.

13             THE COURT:  On July 11, 2017, Defendant Henry

14   Diaz-Rivera pled guilty to Counts One and Three of the

15   indictment in Criminal Case No. 17-217.

16             Count One charges a violation of Title 21,

17   United States Code section 841(a)(1), possession with intent

18   to distribute cocaine.

19             Count Three charges a violation of Title 18, United

20   States Code section 924(c)(1)(A)(i), possession of a firearm

21   in furtherance of a drug trafficking crime, which is a

22   class A felony.

23             The November 1st 2016 Edition of the Sentencing

24   Guidelines Manual has been used to calculate the guideline

25   adjustments pursuant to the provisions of guideline section

1    1B1.11(a) because no new amendments were promulgated by the

2    Sentencing Commission in 2017.

3              As to Count One, the drug count, the guideline for

4    a violation of Title 21, United States Code section 841, is

5    found in sentencing guideline section 2D1.1.  That section

6    provides that an offense involving possession with intent to

7    distribute less than 50 grams of cocaine has a base offense

8    level of 12 pursuant to sentencing guideline section

9    2D1.1(c)(14).

10             Because this offense is less than 50 grams of

11   cocaine, this is a class C felony.

12             Because Mr. Diaz timely accepted responsibility for

13   that offense, that offense level is reduced by two levels

14   pursuant to guideline section 3E1.1(a).

15             There are no other applicable guideline

16   adjustments.

17             His total offense level for Count One, the drug

18   count, is 10.

19             As to Count Three, the weapons count, the guideline

20   sentence is the minimum term required by statute, which in

21   this case is 60 months, to be served consecutively to the

22   term of prisonment for the drug count.

23             The firearm was a Model 23, .40 Glock pistol,

24   serial number SFU345, which was modified to shoot

25   automatically, in other words, a machine gun.

Mr. Diaz has nine prior arrests by Commonwealth authorities:

In 2004 he was arrested for first-degree murder, brandishing a firearm, unlicensed possession of a firearm, but he was acquitted of the charges.

In 2007 he was again charged with unlicensed possession of a firearm, attempted first-degree murder, and again for a first-degree murder, and he was again acquitted by a verdict of not guilty.

In 2004 he was charged with possession of controlled substances, but the case was dismissed.

In 2009 he was charged with possession with intent to distribute controlled substances, but no probable cause was found.

In 2010, a criminal contempt charge was dismissed pursuant to Rule 247(b) of the Puerto Rico Rules of Criminal Procedure upon of Prosecutor's motion.

In 2015 he was arrested for conjugal threats, but no probable cause was found.

In 2004 he was arrested for threats, but the case was dismissed pursuant to Rule 64(n)(4) of the Puerto Rico Rules of Criminal Procedures, the Commonwealth Speedy Trial Act.

In 2005 he was detained for unlicensed possession of a firearm and attempted first-degree murder, but that case

1  was also dismissed pursuant to Rule 64(n)(4) of the

2  Puerto Rico Rules of Criminal Procedures, again, the

3  Commonwealth Speedy Trial Act.

4        In 2006 Mr. Diaz was charged with unlicensed

5  firearm possession and ammunition, attempted first-degree

6  murder, brandishing or firing a firearm, and, again, all

7  charges were dismissed pursuant to Rule 64(n)(4) of the

8  Puerto Rico Rules of Criminal Procedure.

9        Also, in 2015 he was charged with resistance or

10  obstruction of a public authority, but that case was -- you

11  guessed it -- dismissed pursuant to the Commonwealth Speedy

12  Trial Act.

13        Because Mr. Diaz has been previously convicted by

14  the Superior Court of Carolina for possessing unlicensed

15  ammunition and a firearm for which he was sentenced to six

16  months and a day of imprisonment, and for illegally

17  possessing a firearm, for which he was sentenced for five

18  years of imprisonment, a total of five criminal history

19  points resulted, which places him in Criminal History

20  Category III.

21        As to Count One, based on a total offense level of

22  10 and a Criminal History Category of III, the guideline

23  imprisonment range for Mr. Diaz's drug offense is from 10 to

24  16 months.

25        There is a fine range of $2,000 to $1 million, plus

1    a supervised release term of not more than five years.

2        The probation officer has correctly adjusted the

3    guideline computations for Count One, and the pre-sentence

4    investigation report satisfactorily reflects the components

5    of Mr. Diaz's offenses by considering their nature and

6    circumstances.

7        The Court has also considered the other sentencing

8    factors set forth in Title 18, United States Code

9    section 3553(a).

10        Mr. Diaz is 35 years old -- 32 years old.  He has a

11    seventh grade education, was unemployed prior to his arrest

12    for his offense, and has a history of using marijuana and

13    cocaine combined with Xanax and Percocet.

14        During his arrest, agents seized from Mr. Diaz the

15    following items from inside his backpack and his home:  86

16    small plastic bags containing detectable amounts but totally

17    less than 50 grams of a white-colored powdery substance that

18    was later identified as cocaine; one small plastic

19    red-colored Ziploc baggy containing an aluminum foil wrapping

20    containing heroin; five cellular phones; $572 in United

21    States currency; one small black and white ledger containing

22    names and numbers; one .40 caliber, Model 23, Glock pistol

23    with serial number SFU345, along with a selector switch, a

24    chip, used to alter the pistol to fire automatically; 41

25    rounds of .40 caliber ammunition; eight rounds of 7.62

caliber ammunition; a 22-round .40 caliber pistol high

capacity magazine; a red-colored part of a firearm and

accessories described as a slide-back plate; 100 empty

plastic vials described as paraphernalia; four red empty

aluminum wrappings described as paraphernalia; and two small

empty plastic Ziploc baggies also described as paraphernalia.

    As verified with the federal arresting agent,

Mr. Diaz did not comply with the arresting officer's orders

at the moment of his arrest.

    The parties have recommended an imprisonment range

of 1 year as to Count One, to be served consecutively to the

imprisonment sentence imposed on Count Three.

    With respect to Count Three, taking into

consideration that Count Two, possession with intent to

distribute heroin; Count Four, carrying and using a machine

gun in relation to a drug trafficking crime; Count Five,

possessing a machine gun; and Count Six, being a convicted

felon in possession of a firearm, will be dismissed, the

Defendant has requested an imprisonment sentence of no less

than nine years, and the United States has argued for an

imprisonment sentence of 11 years, for a total of 10 years by

the Defendant and 12 years by the Government.

    Because of the seriousness of the charges that have

been dismissed against Mr. Diaz, his extensive prior criminal

record, and the need for deterrence in Puerto Rico, as found

1   by the First Circuit in the cases of *Flores-Machicote* and

2   *Narvaez-Soto*, the Court finds that the sentences which the

3   parties have requested do not reflect the seriousness of

4   Mr. Diaz's offenses, do not promote respect for the law, do

5   not protect the public from further crimes by Mr. Diaz, and

6   do not address the issues of deterrence and punishment.

7          Accordingly, it's the judgment of the Court that

8   Henry Diaz-Rivera is committed to the custody of the Bureau

9   of Prisons to be imprisoned for a term of 16 months as to

10  Count One and 164 months as to Count Three, to be served

11  consecutively to each other, for a total imprisonment term of

12  180 months.

13         Upon release from confinement, Mr. Diaz shall be

14  placed on supervised release for a term of three years as to

15  Count One and five years as to Count Three, to be served

16  concurrently with each other under the following terms and

17  conditions:

18         He shall observe the standard conditions of

19  supervised release recommended by the United States

20  Sentencing Commission and adopted by this Court.

21         He shall not commit another Federal, State or local

22  crime.

23         He shall not possess firearms, destructive devices

24  or other dangerous weapons.

25         He shall not possess or use controlled substances

1   unlawfully and shall submit to a drug test within 15 days of

2   release from imprisonment.

3           After his releases, Mr. Diaz shall submit to random

4   drug testing, not less than three samples during the

5   supervision period, but not more than 104 samples each year,

6   in accordance with the Drug Aftercare Program Policy of the

7   United States Probation Office, as has been approved by this

8   Court.

9           If the illegal use of controlled substances is

10  detected in any sample, Mr. Diaz shall participate in an

11  inpatient or an outpatient substance abuse treatment program

12  for evaluation or treatment as arranged by the probation

13  officer.

14          Payment shall be based on his ability to pay or the

15  availability of payments by third parties as approved by the

16  Court.

17          He shall participate in transitional and reentry

18  support services, including cognitive behavioral treatment

19  services, under the guidance and supervision of the probation

20  officer.

21          Mr. Diaz shall participate in the services until he

22  is discharged by the service provider with the approval of

23  the probation officer.

24          He shall complete his high school education and

25  shall participate in vocational training and a job placement

1  program as recommended by the probation officer.

2          He shall provide the probation officer access to

3  any financial information upon request.

4          He shall cooperate in the collection of a DNA

5  sample as directed by the probation officer pursuant to the

6  revised DNA collection requirements and Title 18, United

7  States Code section 3563(a)(9).

8          He shall submit himself and his property, house,

9  residence, vehicles, papers and effects, computers and other

10 electronic communication or data storage devices or media to

11 a search, at any time, with or without a warrant, by the

12 probation officer and, if necessary, with the assistance of

13 any other law enforcement officer, but only in the lawful

14 discharge of the supervision functions of the probation

15 officer, who must have a reasonable suspicion of unlawful

16 conduct or of a violation of a condition of supervised

17 release.

18         The probation officer may seize any electronic

19 communication or electronic device or medium, which will be

20 subject to further forensic investigation or analysis.

21         Failure to permit a search and seizure may be

22 grounds for revocation of supervised release.

23         Mr. Diaz shall warn any other resident or occupant

24 that his premises may be subject to searches pursuant to this

25 condition.

1    Having considered Mr. Diaz's financial condition,
2 is fine is is not imposed.
3    A special monetary assessment in the amount of $100
4 per count is imposed, however, as required by law, for a
5 total of $200.
6    Mr. Diaz, you have entered into a plea agreement in
7 which you waived your right to appeal your conviction and
8 your sentence.  That waiver is enforceable.  But if your
9 waiver is unenforceable, you may present that argument to the
10 Appellate Court.
11    A notice of appeal must be filed within 14 days of
12 judgment being entered in your case.
13    If you are unable to pay the cost of an appeal, you
14 may apply for leave to appeal *in forma pauperis.*
15    If you request it, the Clerk of the Court will
16 prepare and file a notice of appeal on your behalf.
17    Mr. Cuyar, is there any particular institution that
18 you would like me to recommend?
19    MR. CUYAR-OLIVO:  Yes, Your Honor.  Coleman
20 Florida.
21    THE COURT:  I will recommend that Mr. Diaz be
22 designated to the Coleman facility in Orlando, Florida.
23    MR. CUYAR-OLIVO:  Because he wants to take
24 refrigeration courses, and they are available there.  He also
25 wants to take the drug treatment program, Your Honor.

1          THE COURT:  I will recommend that Mr. Diaz take

2     courses in refrigeration or any other vocational training

3     that may be available at the institution.

4          I would also recommend that if a GED program is

5     available at the institution, that he take advantage of it.

6          MR. CUYAR-OLIVO:  And English courses, if possible.

7          THE COURT:  And English as a Second Language also,

8     and that he participate in the 500-hour drug treatment

9     program that is offered by the Bureau of Prisons.

10          Anything else?

11          MR. CUYAR-OLIVO:  Yes , Your Honor.

12          We have to respectfully, for the record, object the

13     sentence imposed to Mr. Diaz.  We submit that it's

14     unreasonable substantially and procedurally.

15          With respect to the case of *Machicote*, Your Honor,

16     we respectfully object its findings, its analysis.  We submit

17     that it is not supported by scientific empirical evidence.

18          On the contrary, Your Honor, we submit that

19     certainty of punishment have a deterrent effect, but not the

20     amount of time.

21          There are three National Academy of Science panels

22     all appointed by Republican presidents reached that

23     conclusion, that the certainty of punishment is what does

24     have a deterrent effect.

25          All of these three National Academy of Science

1    panels were all appointed by Republican presidents.  They

2    reached that conclusion, including Michael Tonry, Purposes of

3    Functions of Sentencing, 34th Criminal and Justice Review of

4    Search at pages 32 and 29.  In other studies, Specific

5    Deterrence in a Sample of Offenders Convicted of White-Collar

6    Crimes, 33 Criminology 587, from 1995, and from Donald Green

7    and Daniel Wink, Using Random Judgment Assignment to Estimate

8    the Effects of Incarceration and Probation on Recidivism and

9    on Drug Offenders.

10            What we submit is the certainty of being punished,

11    like in this case, provides deterrence, Your Honor.  In this

12    case, Your Honor, I am moving, respectfully, briefly, for

13    reconsideration.  As Your Honor mentioned, the guideline

14    appropriate was 60 months, Your Honor.  We are talking about

15    the double -- three times, Your Honor.

16            We are respectfully requesting if Your Honor could

17    move to the Court to grant what the Government was

18    requesting, Your Honor, the 12 months in total.  We believe

19    that in this case he has a criminal history, but we have to

20    submit, we litigated for five years in the State Court.  And

21    with respect to the arrest, when there is a case dismissed by

22    Rule 64, Speedy Trial on the State court, there is Rule 67,

23    order dismissing process when a new one starts, a resolution

24    declaring to place a motion to dismiss shall not prevent the

25    initiation of another process for the same offense, unless

1    the defect or objection, were irreparable or, unless in the

2    case of a misdemeanor, the motion is declared with place to

3    be one of the foundations listed in Rule 64(n).

4         The Government, when it's a felony and it is

5    dismissed once, they have the opportunity to re-file it,

6    Your Honor.  And I think that when the Government does not

7    take advantage of that opportunity, that should not be taken

8    against Mr -- against any person, in this case Mr. Diaz.

9         With respect to the no probable cause, Your Honor,

10   we are aware of -- that is Rule 23 of the Criminal

11   Procedures.  We also have Rule 24, the VPA, that they have

12   the opportunity, Government, with that same evidence of his

13   other evidence to go with another judge and present the case

14   again.  And in none of these cases we noted that the

15   Government and that VPA Rule 24 was conducted.

16        THE COURT:  Well, the Prosecutor has discretion as

17   to what to do, so I don't know why they didn't do it.  I

18   don't know why they didn't re-file the Rule 64 dismissals,

19   but they are there.

20        MR. CUYAR-OLIVO:  Okay, Your Honor.

21        THE COURT:  They are there, and they happen.

22        MR. CUYAR-OLIVO:  Submitted as to that matter,

23   Your Honor.

24        In moving in reconsideration, Mr. Reyes standing by

25   the plea agreement, Your Honor, we stood by what we were able

1    to request, that was the 10 years.  We respectfully move to

2    the Court to give an opportunity -- this the first time that

3    he is in Federal Court, the first time that he will be

4    released on conditions.  He was not on parole.  He was not

5    under supervision at that moment.  He didn't have cases at

6    that time.

7            My respectful reconsideration, Your Honor, is to

8    grant what the Government was requesting, the 12 months.  We

9    stand by the plea agreement.  We have no appeal.  And

10   Your Honor will have -- if he fails, Your Honor will have him

11   here.  Your Honor will be able to give him up to 60 months

12   each time he fails.

13           So, respectfully moving to the Court, instead of

14   the 10 years that we were requesting, we are requesting the

15   12 years that the Government was requesting, Your Honor.

16           Respectfully submitted.

17           THE COURT:  Your reconsideration is denied.

18           As far as the certainty of sentence, this sentence

19   is pretty certain.

20           And as far as your argument of recidivism, I don't

21   know if that's true or not, whether a longer sentence really

22   deters someone, but certainly it keeps them off the street

23   for a long time.

24           Mr. Reyes, you had something to say.

25           MR. REYES-RAMOS:  Yes, Your Honor.

1    Based on our interpretation of the Court's

2  sentencing explanation, we understand that Your Honor is not

3  taking notice of the Defendant actually committing the crimes

4  that were charged during his arrests.  That is our

5  impression.  And we understand that the Court would have

6  imposed the same sentence, even assuming that the Defendant

7  did not commit those crimes.  If Your Honor could clarify

8  that for the record.

9    THE COURT:  Well, I don't think I need any further

10  clarification.  I mentioned the fact that those crimes were

11  either dismissed or no probable cause was found, and that's

12  one of the things that I took into consideration.  It's an

13  extensive prior criminal record.

14    Are there any --

15    MR. REYES-RAMOS:  We request the dismissal of the

16  remaining counts, Your Honor.

17    THE COURT:  The remaining counts in Criminal

18  No. 17-217 against Henry Diaz-Rivera are dismissed.

19    MR. REYES-RAMOS:  And that the forfeiture order be

20  made part of the judgment.

21    THE COURT:  The forfeiture is made part of the

22  judgment.

23    You're excused.

24    MR. CUYAR-OLIVO:  Your Honor, I am not saying I am

25  repetitive, but just to let the record -- I am objecting for

1   unreasonableness, procedurally and substantively.

2          THE COURT:  Your objections are noted.

3          MR. CUYAR-OLIVO:  Thank you, Your Honor.

4

5          (PROCEEDINGS ADJOURNED AT 10:45 A.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, JOE REYNOSA, Official Court Reporter for the United States District Court for the District of Puerto Rico, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct computer-aided transcript of proceedings had in the within-entitled and numbered cause on the date herein set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

S/Joe Reynosa

_____

**JOE REYNOSA, CSR, RPR**
United States Court Reporter
Federico Degetau Federal
Building, Room 150
150 Carlos Chardón Street
San Juan, Puerto Rico 00918-176
(787) 772-3000

Joe Reynosa, CSR, RPR
Official Court Reporter